**RECORD NOS. 14-1541(L); 14-1543; 14-1576**

In The

# United States Court of Appeals

### For The Fourth Circuit

### In re: NATIONAL HERITAGE FOUNDATION, INCORPORATED,

*Debtor.*

-------------------------------------------------------------------------------------------

## JONATHAN D. MILLER; NYE, PEABODY STIRLING, HALE & MILLER, LLP; DANIEL JOSEPH SCHENDZIELOS; SCHENDZIELOS & ASSOCIATES, LLC; JOHN R. BEHRMANN; NANCY BEHRMANN,

*Appellants*,

v.

## NATIONAL HERITAGE FOUNDATION, INCORPORATED,

*Debtor – Appellee.*

### ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AT ALEXANDRIA

————————————

### BRIEF OF APPELLANTS

————————————

John F. Bloss
HIGGINS BENJAMIN PLLC
101 West Franklin Street, Suite 500
Greensboro, North Carolina 27401
(336) 273-1600

Daniel J. Schendzielos
SCHENDZIELOS & ASSOCIATES, LLC
8547 East Arapahoe Road, J-534
Greenwood, Village, Colorado 80112
(303) 773-6600

Jonathan D. Miller
NYE, PEABODY, STIRLING,
  HALE & MILLER
33 West Mission Street, Suite 201
Santa Barbara, California 93101
(805) 963-2345

*Counsel for Appellants*
  *J. Behrmann and N. Behrmann*

*Counsel for Appellants*
  *D. Schendzielos and*
  *Schendzielos & Associates, LLC*

*Counsel for Appellants*
  *J. Miller and Nye, Peabody,*
  *Stirling, Hale & Miller*

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. __14-1541__    Caption: _In Re: National Heritage Foundation, Inc.  v. Jonathan Miller, et al,_

Pursuant to FRAP 26.1 and Local Rule 26.1,

_John R. Behrmann and Nancy Behrmann_____
(name of party/amicus)

_____

who is ___ _____are appellants_____ , makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1.    Is party/amicus a publicly held corporation or other publicly held entity?  ☐ YES ☑ NO

2.    Does party/amicus have any parent corporations?    ☐ YES ☑ NO
      If yes, identify all parent corporations, including grandparent and great-grandparent corporations:

3.    Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?    ☐ YES ☑ NO
      If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?    ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?    ☑YES ☐NO
If yes, identify any trustee and the members of any creditors' committee:
Official Committee of unsecured creditors of National Foundation, Inc., creditor, Judy A. Robbins, II, Trustee

Signature: /s/John F. Bloss, Esq.                                    Date:        6/27/2014

Counsel for: John & Nancy Behrmann

## CERTIFICATE OF SERVICE
**************************

I certify that on        6/27/2014        the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

Erika L. Morabito, Esq. (emorabito@foley.com)
David B. Goroff, Esq. (dgoroff@foley.com)
Lelia Winget-Hernandez, Esq.
(lelia@winget-hernandez.com)

/s/John F. Bloss, Esq.                                            6/27/2014
(signature)                                                            (date)

- 2 -

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................... iii

STATEMENT OF APPELLATE JURISDICTION .................................... 1

STATEMENT OF THE ISSUES ........................................................ 4

STATEMENT OF THE CASE ........................................................... 5

    1.    The Debtor's Solicitations of Contributions ........................... 5

    2.    Misuse and Misappropriation of Donated Funds ................... 7

    3.    Debtor's Bankruptcy and the Transfer of Appellants' Contributions ................................................................... 8

    4.    The Debtor's Plan of Reorganization and Confirmation ................... 12

    5.    This Court's Vacating of Release and Exculpation Provisions .......... 15

    6.    Initiation of California Litigation; Proceedings in Bankruptcy Court on Remand ................................................................ 16

    7.    The Motion for Leave ........................................................ 19

    8.    The Contempt Proceedings ................................................. 20

    9.    District Court Affirmance .................................................. 22

SUMMARY OF ARGUMENT ......................................................... 22

ARGUMENT ............................................................................. 24

    I.    THE BANKRUPTCY COURT ERRED IN DENYING THE MOTION FOR LEAVE ......................................................... 24

        A.    Standard of Review ................................................. 24

i

B. The Bankruptcy Court Erred in Concluding that *Res Judicata* Precludes Appellants from Prosecuting Exculpated Claims .................................................25

C. The Behrmanns' Bankruptcy-Related Claims Against the Houk Family are Well-Founded ...............................................28

II. THE BANKRUPTCY COURT ERRED IN CONCLUDING APPELLANTS ACTED IN CONTEMPT OF THE CONFIRMATION ORDER AND THAT NHF HAD BEEN HARMED AS A RESULT ................................................................30

A. Standard of Review ..................................................30

B. NHF Was Not Harmed By the Filing of the Original Complaint .................................................................32

C. The Amended Complaint Cannot Serve as a Basis for Contempt ...................................................................33

D. The Bankruptcy Court Lacked Jurisdiction to Enter a Contempt Order That Was in the Nature of Criminal Contempt *(Appellants Schendzielos and Schendzielos & Associates, LLC)* .................................................38

CONCLUSION ........................................................................41

REQUEST FOR ARGUMENT .............................................................41

CERTIFICATE OF COMPLIANCE ...................................................43

CERTIFICATE OF FILING AND SERVICE .......................................44

# TABLE OF AUTHORITIES

**Page(s)**

*Accusoft Corp. v. Palo*,
  237 F.3d 31 (1st Cir. 2001)..........................................................................31

*Am. Bankers Ins. Group v. Long*,
  453 F.3d 623 (4th Cir. 2006) .......................................................................25

*Asia Pac. Indus. Corp. v. Rainforest Cafe, Inc.*,
  380 F.3d 383 (8th Cir. 2004) .......................................................................31

*Beasley v. FV-I, Inc.*,
  2013 U.S. Dist. LEXIS 39640 (E.D. Va. Mar. 21, 2013)..............................36

*Behrmann, et al. v. Goldstein, et al.*, CV12-5636 DMG (CWx), (C.D. Cal.) ..16, 22

*Behrmann v. National Heritage Foundation, Inc.*,
  Civ. Act. No. 01:10-cv-40, Dkt. 22 (E.D. Va. Aug. 17, 2010) ....................15

*Behrmann v. National Heritage Foundation, Inc.*,
  663 F.3d 704 (4th Cir. 2011) .............................................................1, 15, 16

*Bloom v. State of Ill.*,
  391 U.S. 194, 88 S. Ct. 1477, 20 L. Ed. 2d 522 (1968) ...............................39

*Commonwealth ex rel. Terry v. Virginia Telemarketing, Inc..*,
  15 Va. Cir. 489, 1989 Va. Cir. LEXIS 58 (May 9, 1989) .............................30

*Cook Group, Inc. v. Wilson*,
  1999 U.S. App. LEXIS 27340 (4th Cir. Sep. 14, 2009), *cert. denied*,
  529 U.S. 1082 (2000)..............................................................................31, 40

*Cooper v. Smithfield Packing Inc.*,
  2011 WL 3207912 (E.D.N.C. Jul. 27, 2011).................................................36

*Cuthill v. Greenmark, LLC (In re World Vision Entm't, Inc.)*,
  275 B.R. 641 (Bankr. M.D. Fla. 2002).........................................................29

*Davis v. Villers*,
   5:12CV48, 2012 WL 7017863 (N.D.W. Va. Oct. 9, 2012) ..........................36

*Field v. GMAC LLC*,
   660 F. Supp. 2d 679, 686 (E.D. Va. 2008), *aff'd*,
   328 F. App'x 873 (4th Cir. 2009)………………………………………………..35

*Gates v. Shinn*,
   98 F.3d 463 (9th Cir. 1996) ...........................................................................3

*Glynne v. Wilmed Healthcare*,
   699 F.3d 380 (4th Cir. 2012) .......................................................................25

*Gompers v. Bucks Stove & Range Co.*,
   221 U.S. 418, 31 S. Ct. 492, 55 L. Ed. 797 (1911) ....................................40

*Guttman v. Constr. Program Group (In re Railworks Corp.)*,
   760 F.3d 398 (4th Cir. 2014) .......................................................................24

*Grimmett v. Brown*,
   75 F.3d 506 (9th Cir. 1996) .........................................................................35

*Hanshaw v. Day*,
   202 Va. 818, 120 S.E.2d 460 (1961) ...........................................................30

*Hass v. Duncan*,
   2005 U.S. Dist. LEXIS 13400 (E.D. Va. Jul. 6, 2005).................................33

*Holcombe v. US Airways, Inc.*,
   210 U.S. App. LEXIS 4729 (4th Cir. Mar. 5, 2010) ...................................35

*In re Am. Capital Equip., LLC*,
   688 F.3d 145 (3d Cir. 2012) .......................................................................27

*In re Boyajian*,
   564 F.3d 1088, 1092-93 (9th Cir. 2009) …………………………………..37

*In re Chandler*,
   906 F. 2d 248 (6th Cir. 1990)………………………………………………40

*In re GMC*,
    61 F.3d 256 (4th Cir. 1995) ...............................................................31, 33, 36

*In re Jacques*,
    761 F.2d 302 (6th Cir. 1985)……………………………………………40

*In re Johnson*,
    362 B.R. 730 (Bankr. N.D. W. Va. 2007) .....................................................33

*In re Maat, Inc.*,
    Case No: 6:05-bk-17325 (Bankr. M.D. Fla.)...................................................8

*In re NHF*,
    2009 Bankr. LEXIS 4928 (Bankr. E.D. Va. Oct. 16, 2009).........................14

*In re NHF*,
    2013 Bankr. LEXIS 2516 (June 21, 2013) ..................................................21

*In re NHF*,
    478 B.R. 216 (Bankr.  E.D. Va. Aug. 24, 2012) ..........................................17

*In re NHF*,
    510 B.R. 526 (Bankr. E.D. Va. 2014)  ...................................................22, 25

*In re Williams*, 191 B.R. 497, 1996 Bankr. LEXIS 90, Bankr. L. Rep. (CCH) P76,
29 Bankr. Ct. Dec. 616..........................................................................................40

*Int'l Union, United Mine Workers of Am. V. Bagwell*,
    512 U.S. 821, 114 S. Ct. 2552, 129 L. Ed. 2d 642 (1994)  ....................39, 41

*JTH Tax, Inc. v. H&R Block E. Tax Servs.*,
    359 F.3d 699 (4th Cir. 2004) .................................................................32, 33

*Kaiser Aluminum Corp. v. Moss Landing Commer. Park, LLC*,
    2010 U.S. App. LEXIS 13941 (3d Cir. July 8, 2010) ..................................35

*McCormick v. Banc One Leasing Corp. (In re McCormick)*,
    49 F.3d 1524 (11th Cir. 1995) .....................................................................27

*McDaniel v. Blust*,

668 F.3d 153 (4th Cir. 2012) ................................................................25, 28

*McDow v. Dudley*,
  662 F.3d 284 (4th Cir. 2011) .........................................................2

*NHF v. Behrmann*,
  2013 U.S. Dist. LEXIS 49081 (E.D. Va. April 3, 2013)...............................17

*NHF v. Highbourne Foundation*,
  2014 U.S. App. LEXIS 12144 (4th Cir. June 27, 2014) ...............................17

*NHF v. Highbourne Foundation*,
  2014 U.S. App. LEXIS 14179 (4th Cir. Jul. 25, 2014) ................................17

*Omega World Travel, Inc.*,
  1990 U.S. App. LEXIS 27312 (4th Cir. 1990)................................................3

*Paul v. Iglehart (In re Paul)*,
  534 F.3d 1303 (10th Cir. 2008) .....................................................36

*Reliable Elec. Co. v. Olson Const. Co.*,
  726 F.2d 620, 623 (10th Cir. 1984) .....…………………………………………..37

*Shuffler v. Heritage Bank*,
  720 F.2d 1141 (9th Cir. 1983) .........................................................3

*Spicer v. Laguna Madre Oil & Gas II, L.L.C. (In re Tex. Wyo. Drilling, Inc.)*,
  647 F.3d 547 (5th Cir. 2011) .........................................................26

*Thomas v. Ross & Hardies*,
  9 F. Supp. 2d 547, 554 (D. Md. 1998) …..………………………………………..35

*TWM Mfg. Co., Inc. v. Dura Corp.*,
  722 F.2d 1261 (6th Cir. 1983)…………..…………………………………40, 41

*U.S. v. Lavabit, LLC (In re Under Seal)*,
  749 F.3d 276 (4th Cir. 2014) .....................................................31

*United States ex rel. Radcliffe v. Purdue Pharma L.P.*,
  737 F.3d 908 (4th Cir. 2013) .........................................................25, 26, 28

vi

*United States v. Local 1804-1, Int'l Longshoremen's Ass'n,*
    44 F.3d 1091 (2d Cir. 1995) ....................................................................31, 36

*Vincent v. Int'l Brotherhood of Teamsters,*
    424 F.2d 124 (2d Cir. 1970) ...............................................................................3

*Young v. City of Mt. Ranier,*
    238 F.3d 567 (4th Cir. 2001) ...........................................................................32

## **STATUTES**

11 U.S.C. § 101(10) ..................................................................................................13

11 U.S.C. § 101(5) ....................................................................................................13

11 U.S.C. § 1123(a)(5)..............................................................................................16

11 U.S.C. § 1129(a)(3) ...................................................................................14, 23, 27

11 U.S.C. § 1129(a)(8)..............................................................................................13

11 U.S.C. § 1141 .............................................................................................13, 24, 34

11 U.S.C. § 1141(d)(1)........................................................................................21, 37

11 U.S.C. 1129(a)(3)........................................................................................14, 23, 27

28 U.S.C. § 1291 .......................................................................................................3, 4

28 U.S.C. § 1334(b) ....................................................................................................2

28 U.S.C. § 157(b) ......................................................................................................2

28 U.S.C. § 158(a) ......................................................................................................2

28 U.S.C. § 158(d) ......................................................................................................4

Ga. Code Ann. § 44-5-87 .........................................................................................30

## **RULES**

4th Cir. L. R. 34(a) .................................................................................................41

Fed. R. Bankr. P. 8001(a) ....................................................................................2

Fed. R. Civ. P. 9 ...……………………………………………………………35

## <u>STATEMENT OF APPELLATE JURISDICTION</u>

This appeal arises in the aftermath of this Court's decision in *Behrmann v. National Heritage Foundation, Inc*., 663 F.3d 704 (4th Cir. 2011), which vacated nondebtor Release, Exculpation, and Injunction provisions in a Chapter 11 plan confirmation order, and remanded for further bankruptcy court proceedings. The Release provision in the confirmation order immunized directors and officers of the bankruptcy Debtor, Appellee National Heritage Foundation, Inc. ("NHF"), from liability for fraud committed before NHF filed for Chapter 11 bankruptcy protection. The Exculpation clause insulated them from liability for their unlawful conduct during the pendency of NHF's bankruptcy case.

Before the bankruptcy court determined on remand whether the provisions at issue would be reinstated, the Appellants, in order to avoid the lapse of applicable statutes of limitations, filed a federal court action asserting RICO violations and other claims against, *inter alia*, NHF and its directors and officers. The complaint included claims against NHF, as well as claims against NHF's directors and officers that arguably would have run afoul of the Exculpation provision that had been vacated by this Court. The original complaint was not served on any defendant.

The bankruptcy court then entered an order reinstating the Exculpation provision but declining to restore the Release provision. The Appellants thereafter

amended their RICO complaint in an effort, *inter alia*, to clarify that they were not seeking recovery from NHF for pre-confirmation actions or from the directors and officers for claims arising during the exculpation period.

Appellants then sought leave from the bankruptcy court to pursue the exculpated claims. The bankruptcy court, which had jurisdiction to adjudicate the matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b), denied the motion, on grounds that Appellants here contend are erroneous.

NHF then filed a motion for contempt. The bankruptcy court, after an evidentiary hearing, ruled that the Appellants, by filing the original and amended RICO complaints, were in contempt of the confirmation order. Bankruptcy court jurisdiction, to the extent it existed, arose under 28 U.S.C. §§ 157(b) and 1334(b).

Appellants separately appealed to the district court (1) the order denying their motion to prosecute the exculpated claims, and (2) the contempt order. The district court, which had jurisdiction over the appeals pursuant to 28 U.S.C. § 158(a) and Fed. R. Bankr. P. 8001(a), affirmed both orders in a single opinion.

Both bankruptcy court orders are ripe for review. The order denying the Appellants' motion for leave to pursue the exculpated claims left no other issues pending between the parties in the bankruptcy court (NHF had not yet filed its contempt motion) and, accordingly, was immediately appealable. *See McDow v. Dudley*, 662 F.3d 284, 287 (4th Cir. 2011) ("[O]rders in bankruptcy cases may be

immediately appealed if they finally dispose of discrete disputes within the larger case" (citation, quotation omitted)).

The bankruptcy court's contempt order, which was entered when contempt-related issues were the only matters pending between these parties in that court, was a final and appealable order for purposes of 28 U.S.C. § 1291. *See, e.g.*, *Vincent v. Int'l Brotherhood of Teamsters*, 424 F.2d 124, 128 (2d Cir. 1970) ("Where . . . civil contempt proceedings are instituted after the conclusion of the principal action rather than during the pendency of the action, the order disposing of the contempt proceedings is appealable"); *Omega World Travel, Inc.*, 1990 U.S. App. LEXIS 27312 at *7-8 n.3 (4th Cir. May 10, 1990) (contempt order that is "wholly separate" from pending matters in underlying lawsuit "is ripe for review"). The fact that the contempt order threatened fines in the event that the Appellants did not amend their RICO complaint by a date certain does not render the contempt order any less final for purposes of appellate review. *See, e.g.*, *Gates v. Shinn*, 98 F.3d 463, 467 (9th Cir. 1996) ("[N]either the undetermined total amount of sanctions, nor the fact that the sanctions are conditional, defeats finality of a post-judgment contempt order" (citations omitted)); *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1145 (9th Cir. 1983) ("Even though the size of the sanction imposed by the order depends upon the duration of contumacious behavior occurring after entry of

-3-

the contempt order, the order is nonetheless final for purposes of section 1291" (citations omitted)).

Because the bankruptcy court orders at issue, as well as the district court's order affirming those orders, were final, appealable orders, this Court has jurisdiction to hear this appeal pursuant to 28 U.S.C. §§ 158(d) and 1291.

## STATEMENT OF THE ISSUES

The issues presented by this appeal are the following:

1.    Whether the Bankruptcy Court erred in concluding in its June 21, 2013 "Opinion and Order Adjudging John and Nancy Behrmann; Jonathan D. Miller; Nye, Peabody, Stirling, Hale & Miller, LLP; Daniel J. Schendzielos; and Schendzielos & Associates, LLC to be in Contempt of Court" (the "Contempt Order") that Appellants were in contempt.

2.    Whether the Bankruptcy Court erred in denying Appellants' "Renewed Motion for Leave to Pursue Claims Against the Houk Family" (the "Motion for Leave").

3.    Whether the District Court erred in affirming the Contempt Order and the Renewed Motion.

## STATEMENT OF THE CASE

**1.    The Debtor's Solicitations of Contributions.**  NHF is a Georgia

corporation that, until its 501(c)(3) status was revoked on November 21, 2011

(**Dkt. 1403-3** p. 6 ¶ 8), held itself out as a non-profit public charity exempt from

federal income tax. (*See* **Dkt. 578 p. 5; JA 229 ¶ 1**).  NHF's marketing efforts

combined false promises—relating to the charitable uses of donated funds, donor

control of the foundations created for donors by NHF, and wealth preservation[1] —

---

[1] Examples of written representations made by the Houk Family to donors include
the following: On April 12, 1997, "There is no risk to your money the way we
have it invested, but also the yields are a bit less than you can get with riskier
investments" (**JA 572 ¶ 85**); Summer 1999, "The donor can change her mind as
often as she likes, and by letter she can indicate to NHF staff the new instructions"
(**JA 585 ¶ 120**), and "[A] Senior does not have to be afraid that money transferred
to her Foundation, if needed later in life, could not somehow be made available, as
long as bona fide charitable work could be accomplished" (**Dkt. 1180 p. 76 ¶
122(C))；** in Summer 2000, "[W]e are often mistakenly referred to as a 'Donor
Advised Fund.' . . . But NHF never intended to be a Donor Advised Fund." (**JA
586¶ 122**; emphasis in original); in 2001, "NHF is different from Donor Advised
Funds . . . '[W]hen my client sets up his or her 'foundation at NHF' they are, in
essence, setting up **THEIR OWN CHARITY!** . . . **We are NOT a Donor
Advised Fund.**'" (**JA 587-588 ¶ 124**; emphasis in original); In Summer 2001,
"**Question:  I am a control freak.  How much control do I have over what is
done with my donated funds?** . . . A. My personal feeling is that you will have
closer and more effective control with your 'foundation at NHF' than you would in
any other scenario" (**JA 588 ¶ 125**; emphasis in original); in Fall 2003, "As a
separate legal entity, your Foundation continues to 'live' after you've gone on to
your Heavenly reward.  It can continue to pay income to your heirs and others"
(**JA 593 ¶ 131**).

with ecclesiastical hucksterism.[2]  Donors agreed to pay NHF a quarterly management fee to "administer" their foundations as well as a fee upon each contribution made by a donor. (**Dkt. 1180 p. 15 ¶ D**).  In the three years prior to its bankruptcy filing in 2009, NHF had received $77.9 million in charitable donations, and at the time of its bankruptcy, managed net assets with a book value of at least $170 million, including $152 million in 6,014 donor accounts. (*See* **Dkt. 263 pp. 2,4**).

NHF, at all relevant times, maintained its headquarters in Falls Church, Virginia, and operated under the direction of the Houk Family,[3] which at all relevant times controlled its Board of Directors and held most or all of its officer positions. (*See* **JA 230 ¶¶ 3-6; JA 568, 607 ¶¶ 71, 168**).

Appellants John and Nancy Behrmann,[4] an elderly couple in York, Pennsylvania (**Dkt. 1175 at pp. 10, 56; Dkt. 557 p. 1**), were solicited by the Houk Family to contribute money to establish a charitable foundation.  This foundation

---

[2] For example, in Fall 2002, "NHF built its incentive marketing (fund raising) program on the words of Paul to the Corinthian Church (see 1 Corinthians 9:7 ff)." (**JA 590 ¶ 127**).

[3] The "Houk Family" consists of John T. Houk (Chairman and CEO), his wife, Mirian N. Houk (COO and Board member), his son, John T. Houk (President and Board member), his daughter, Janet Ridgely (Vice President) and his daughter-in-law, Julie L. Houk (Board member and former Vice President). (**Dkt. 578 p. 6**).

[4] The remaining Appellants are attorneys and law firms that represent the Behrmanns in the RICO action and which have been adjudged in contempt as a result. (*See* **JA 1320-1322**).

was to be maintained under the auspices of the Debtor and would support

charitable organizations identified by the Behrmanns. (**Dkt. 657 pp. 1-2**).  Relying

on the Houk Family's material misrepresentations and omissions (*see* **JA 605-606**

**¶¶ 165-166**), the Behrmanns established the Highbourne Foundation, and over an

11-year period from January 1997 to December 2007 contributed $1.09 million to

the foundation. (**Dkt. 657 pp. 2-4; Dkt. 832-1 p. 2; JA 604-605 ¶¶ 163-164**).

        2.    **Misuse and Misappropriation of Donated Funds.** Although the

Houk Family was representing to prospective and existing donors that the donors

had the right to manage the assets in their foundations, all the while, in internal

Board meetings going back to 1996,[5] the Houk Family secretly took the position

that the donated funds could be used without restrictions for the sole benefit of the

Houk Family. (**JA 572 ¶ 84**).  And in the face of their representations to donors

that their contributions would be used for charitable purposes, members of the

Houk Family covertly commingled much of the donors' money and used the

donated funds for their own gain. (**Dkt. 18 pp. 2-3 ¶ 6**).  For example and without

limitation, the Houk Family members caused NHF to use the donors' contributions

to obtain loans from PNC Bank and Virginia Commonwealth Bank. (**JA 609 ¶**

---

[5] On a monthly basis from 1994 until NHF's bankruptcy in 2009, NHF provided
each donor who established a foundation with account statements showing
individual account balances for the foundation. (*See*, e.g., **Dkt. 212**). There was
never any indication on any of the account statements that the donors' funds were
being commingled or used as leverage or collateral by the Houk Family to
commercial lenders or for speculative investment vehicles. (**Dkt. 1180 pp. 92-93**).

**168(*l*)).** The Houk family then used the proceeds of these loans for their own

private for-profit investments—such as offshore internet gambling and oil drilling

companies (**JA 546-547, 577 ¶¶ 1, 5, 104**). The profits derived from these

investments were then misappropriated by the Houk Family. (**JA 548 ¶ 5**). They

invested about $20 million of the donors' charitable gifts in Ponzi schemes (**JA

576-577 ¶¶** 99, 100, 104; *see also In re Maat, Inc.*, Case No: 6:05-bk-17325

(Bankr. M.D. Fla.) (Docket No. 9)). Two days before NHF declared Chapter 11

bankruptcy, members of the Houk Family transferred $1 million of funds donated

to NHF (which followed years of previous such transfers, *see* **JA 601 ¶ 153**) into a

company they started called Congressional District Programs, Inc., which directed

funds to election campaigns in violation of IRC 501(c) prohibitions against

engaging in political activities. (**JA 594-595 ¶ 134**).

> **3.** <u>**Debtor's Bankruptcy and the Transfer of Appellants'**</u>

<u>**Contributions.**</u> Before filing its bankruptcy petition, NHF had an approximately

$2 million annually recurring obligation as a result of approximately $25 million in

"Charitable Gift Annuities" it sold in the late 1990s and early 2000s. (**Dkt. 270 p.

5**). The principal had been depleted, however, due to various defalcations by the

Houk Family,[6] and, NHF was secretly liquidating the donors' accounts to cover this obligation. (**Dkt. 270 p. 6; Dkt. 440 pp. 3-4**).

In Fall 2008, a jury in Texas rendered a verdict of $9 million against the Debtor (later reduced by the trial court to about $6.1 million) in favor of a couple who had established a charitable foundation under the Debtor's umbrella.[7] (*See* **JA 91 § 2.46; 1015 p.3 ¶ 14; JA 546 ¶ 2**). Soon afterwards, on January 24, 2009, the Houk Family caused NHF to file a Chapter 11 petition in the bankruptcy court. (**JA 39**).

Six days after NHF filed its bankruptcy petition, on January 30, 2009, it filed an emergency motion (**Dkt. 18**) to liquidate certain "investment accounts" which, it represented to the bankruptcy court, it maintained "to produce income that supports [its] current and future charitable spending and operational overhead." (*Id.* **pp. 2-3 ¶ 6**). NHF identified five such accounts, totaling $680,536.00, that it

---

[6] NHF's CEO, H.T. Houk, had represented to the annuitants that NHF would invest the annuitants' funds "strictly" in accordance with Department of Labor requirements for Pension Plan Reserves. (**Dkt. 27 pp. 6-**7). NHF, however, placed all of the $25 million in the "Vantage Fund," a Massachusetts business trust in which it was the sole shareholder. (*Id.* **pp. 7-8**). It then used 100% of the annuitants' money to make high-risk unsecured loans known as "private placements," mostly to insiders, with disastrous results. (**Dkt. 270 p. 6; Dkt. 1180 p. 146 ¶ 243**).

[7] The jury found NHF liable, *inter alia*, for its deceit in secretly changing the beneficiary of a large life insurance policy, from a local convent chosen by the couple to NHF itself, all the while continuing to allow the couple to pay $85,000 a year to the foundation from 1997 to 2003. (**Dkt. JA 546 ¶ 2**).

intended to liquidate. (*Id.* **p. 10**). NHF did not disclose in the motion that the accounts at issue had been established with donations made to benefit particular foundations. (*See id.*). No notice of the motion was given to the donors whose contributions established the accounts, or to any other donors. (*E.g.,* **Dkt. 25, 39**). The bankruptcy court, on February 9, 2009, signed NHF's proposed order (**Dkt. 18-1**) permitting liquidation of the donors' accounts. (**Dkt. 40**).

On May 8, 2009, NHF filed a motion for approval to liquidate, in its discretion, any of the remaining donor accounts and to deposit to the proceeds into a single account to be used "to fund its contemplated plan of reorganization." (**Dkt. 183 p. 1**). Again, NHF failed to disclose in the motion that the accounts were established for the benefit of particular foundations. Rather, NHF described the accounts as "Investment Accounts" in which it invested in "various mutual funds and other marketable securities" to support its "ongoing operations." (**Dkt. 183 p.2 ¶ 5**). NHF falsely represented to the bankruptcy court that the total value of assets in its bankruptcy estate exceeded the value of anticipated claims against the estate by a mere $100,000.00. (**Dkt. 183 p. 3 ¶ 9; Dkt. 1180 p. 131 ¶ 217**). NHF stated that depositing the "Investment Accounts" into a single account would reduce volatility and ensure that it could reorganize. (*Id.*  **p. 3**). The bankruptcy court granted NHF's motion on May 22, 2009. (**Dkt. 198**). Again, NHF did not serve the motion or resulting order on donors. (*Id.*; **Dkt. 183**).

-10-

On June 4, 2009, the bankruptcy court entered a Consent Order, signed by NHF (**Dkt. 214**), terminating the automatic stay to permit payment of over $7.5 million (**Dkt. 175 p.3 ¶ 3**) to the Virginia Heritage Bank to cure NHF's loan default. Of this amount, NHF appropriated approximately $650,000 from the Behrmann's contributions to the Highbourne Foundation. (**Dkt. 657 p. 4; JA 43, 45**). This confiscation of the Behrmanns' contributions (as well as millions of dollars of other donors' contributions, (*see* **JA 609 ¶ 169**) was accomplished without any notice to donors or any opportunity for them to object. (***Id.***).

The Behrmanns filed a timely claim (**JA 43, 45**) in NHF's reorganization proceedings. NHF lodged an objection to the claim. (**Dkt. 341**). Treating NHF's objection as a summary judgment motion, the bankruptcy court, on February 23, 2010, overruled NHF's objection to the claim, on the grounds, *inter alia*, that

> the statement of claim does adequately set forth a claim for rescission based on fraud for failure to disclose that the contributions made for the express purpose of establishing a donor-advised fund with the debtor would or could be used as collateral for loans or would or could be used to pay general debts rather than being expended for charitable purposes.

(**JA 186**). Later, in June 2010, NHF and the Behrmanns settled, with NHF agreeing to fund a new donor-advised fund established by the Behrmanns at Charles Schwab. (**JA 279**). Importantly, the settlement agreement expressly reserved the Behrmanns' right to pursue judicial relief against the Houk Family for the Behrmanns' remaining injuries. (**JA 282**).

-11-

During and after the bankruptcy, the Houk Family, as debtors-in-possession,
transferred millions of dollars obtained by NHF from donors like the Behrmanns to
other entities that they controlled. (*See*, *e.g.*, **JA 602-603 ¶¶ 155-158**).

**4.    The Debtor's Plan of Reorganization and Confirmation.**  The
Debtor proposed its Fourth Amended Plan of Reorganization (the "Plan") on
October 13, 2009. (**JA 86**).  Despite their earlier representations to donors, *see* fn.
1, *supra*, NHF took the position in the bankruptcy court that the funds in the
charitable foundations were donor-advised funds with no creditors' rights and
could be used by NHF for any purpose.[8] (**JA 98-99 § 6.1; JA 599-600 ¶¶ 143,
146**).  The Plan declared, "The Donors[9] are not creditors of the Debtor." (**JA 98 §**

---

[8] NHF's Plan of Reorganization treated the funds donated by the donors as "Donor
Advised Funds" for purposes of Section 4966(d)(2)(A) of the Internal Revenue
Code. (**JA 89-90, 98-99 §§ 2.34, 6.1**).  The Plan authorized NHF to "liquidat[e]"
assets in the accounts that NHF had theretofore maintained for the benefit of the
donors (**JA 100 § 7.2**).  It contemplated that NHF would use the donors' funds for
NHF's "reasonable and necessary operational costs and expenses (including
establishing sufficient reserves for future operations as it determines in its
discretion)."  The Plan provided that NHF was entitled to make distributions from
a particular donor's foundation without "restrictions or limitations" (**JA 99 § 6.1**),
"as it determines in its sole discretion and consistent with its corporate charter."
(**JA 100 § 7.4**).

[9] A "Donor" is defined in the Plan as "[a]ny individual or entity who has donated
funds or property to the Debtor, whether for the purpose of establishing a 'donor
advised fund' or otherwise." (**JA 89**).

-12-

**6.1; Dkt 263 p. 16**).  By cunningly eliminating "creditor" status[10] for the thousands of donors—despite the fact that donors, like the Behrmanns, who filed and actively prosecuted proofs of claim received significant payments from NHF's bankruptcy estate (*See e.g.*, **JA 240 n.7** (Townsley claim settled for $929,491))—NHF was able to obtain confirmation of its Plan without receiving votes accepting the Plan from a majority of the donors.[11] *See* 11 U.S.C. § 1129(a)(8).  *See also* NHF's Amended Schedules, Schedule F (**Dkt. 148-2**), declaring that donors have "No Claim."

Section 7.19 of the Plan contained a release that purported to insulate certain non-debtor parties, including the Houk Family, from any pre-petition claims (the "Release Provision").  Section 7.21 of the Plan contained an exculpation provision that granted certain non-debtor parties, again including the Houk Family, protection from claims for acts and omissions arising during the Debtor's

---

[10] A "creditor" is defined by the Bankruptcy Code as an entity with a "claim" against the bankruptcy debtor or estate. 11 U.S.C. § 101(10).  A "claim," in turn, is a "right to payment," whether disputed or undisputed. 11 U.S.C. § 101(5). Paradoxically, although NHF successfully took the position for Plan confirmation purposes that donors like the Behrmanns were not creditors and, accordingly, had no possible "claim" against NHF, they later contended successfully that the confirmation order and 11 U.S.C. § 1141 operated to discharge NHF's "debt" to the donors.

[11] J.T. Houk nevertheless represented to donors on June 18, 2009 that he argued to the "Judge that the moneys received were to be held in trust for the charitable purposes selected by the Donor and approved by NHF.  THE COURT OVERRULED ME." (**JA 599-600 ¶ 145**).

bankruptcy case (the "Exculpation Provision"). (**JA 104**).  Finally, Section 7.20 of the Plan provided for an Injunction that implemented the Release and Exculpation Provisions. (**Id.**).

The Behrmanns objected to confirmation of the Plan. (**See Dkt. 585**).  On October 16, 2009, the bankruptcy court, per The Honorable Stephen S. Mitchell, confirmed the Plan, *In re NHF*, 2009 Bankr. LEXIS 4928 (Bankr. E.D. Va. Oct. 16, 2009) (**JA 136**), with certain important modifications.  Significantly, at the request of NHF (**JA 163**; 2009 Bankr. LEXIS 4928 at *46), the bankruptcy court in its confirmation order modified the Plan to include a clause that a creditor could prosecute an exculpated claim "*if such person obtains the prior approval of the Bankruptcy Court to bring such a claim.*" (**JA 163 § 7.21**; emphasis added).  The court also modified the Plan to limit application of the Injunction to persons who filed claims in, or received notice of, NHF's bankruptcy case. (**JA 162-163 §§ 7.19, 7.20**).   These modifications, the court instructed, were "incorporated into [the Plan] and constitute[s] a part thereof." (**JA 151 ¶ 1**).

In confirming the plan, as modified, the Court found, *inter alia*, that NHF established the requirements set forth in Section 1129(a)(3) of the Bankruptcy Code that "[t]he plan has been proposed in good faith and not by any means forbidden by law." (**JA 145**).

-14-

**5.    This Court's Vacating of Release and Exculpation Provisions.**

The Behrmann Appellants appealed the Confirmation Order.  On August 17, 2010,

the district court, per The Honorable Claude M. Hilton, affirmed without opinion.

*Behrmann v. NHF*, Civ. Act. No. 01:10-cv-40, Dkt. 22 (E.D. Va. Aug. 17, 2010).

The Behrmanns then appealed to this Court.  The Court's December 9, 2011

opinion, *Behrmann v. NHF*, 663 F.3d 704 (4th Cir. 2011), first upheld, under the

"clear error" standard of review, *Id.* at 709, the bankruptcy court's finding that

NHF proposed its reorganization plan in good faith:

> Appellants essentially contend that the Chapter 11 filing was a sham
> perpetuated by NHF's officers and directors to secure immunity for
> their fraudulent and misleading conduct in soliciting donations for
> [donor advised funds] and administering those funds. . . .
>
> The bankruptcy court concluded specifically that NHF . . . "filed its
> case and proposed its Plan with the legitimate and honest purpose of
> reorganizing and maximizing both the value of [NHF's] Estate and the
> recovery to Claimants." . . . Because Appellants have not shown that
> the bankruptcy court clearly erred with respect to this finding, we
> reject their contention that the Confirmed Plan fails to satisfy the good
> faith requirement.

*Id.* at 709-10.

The Court then addressed the Behrmanns' challenge to the Release and

Exculpation Provisions.  It determined that the record was inadequate to permit

assessment of whether NHF's circumstances entitled it to the benefit of these

provisions. *Id.* p. 713. The Court, accordingly, "vacate[d] the judgment of the

-15-

district court[12] and remand[ed] this case with instructions to the district court to remand it to the bankruptcy court for further proceedings consistent with this opinion," *Id.* p. 714.

**6.      Initiation of California Litigation; Proceedings in Bankruptcy Court on Remand.**  The Behrmanns, concerned that statutes of limitations were about to lapse, filed suit on June 28, 2012 in the Central District of California against NHF, the Houk Family, and numerous other defendants.  *Behrmann, et al. v. Goldstein, et al*, CV12-5636 DMG (CWx), (C.D. Cal.) (the "California Litigation").  The Complaint (**JA 507**), which was drafted and signed by the attorney and law firm Appellants, included both direct claims by the Behrmanns and claims that the Behrmanns acquired by assignment from others who had been defrauded by the Houk Family, and who had not received notice of NHF's bankruptcy case. (**JA 525-526 ¶ 58; JA 894**).  The original Complaint was not served on any Defendant. (**JA 1496-1497; JA 321 ¶ 9**).

---

[12] The ruling left some room for interpretation as to whether the Court vacated merely the Release and Exculpation Provisions of the confirmation order, or the entire order: "We also note that the Confirmed Plan expressly provides that any clause may be severed should it be determined to be unenforceable, which suggests that the plan would remain viable absent the Release Provisions." *Id.* p. 714.  *But see* Confirmation Order, 2009 Bankr. LEXIS 4928 at *26 ("The releases, exculpation, and injunction provisions described in Sections 7.19, 7.20, and 7.21 of the Plan are essential to the Debtor's reorganization efforts . . .  Each of the discharge, release, indemnification and exculpation provisions set forth in the Plan . . . is an essential means of implementing the Plan pursuant to section 1123(a)(5) of the Bankruptcy Code; [and] is an integral element of the transactions incorporated into the Plan[.]").

-16-

Meanwhile, on remand to the Bankruptcy Court, the Honorable Brian F. Kenney ruled, on August 24, 2012, that the confirmation hearing record did not support the inclusion of the Release Provision in the Plan, and that the Injunction Provision was invalid to the extent that it implemented the Release Provision. *In re NHF*, 478 B.R. 216 (Bankr. E.D. Va. Aug. 24, 2012) (**JA 229**). Judge Kenney, however, reinstated the Exculpation Provision in the Plan, and he ruled that the Injunction Provision is enforceable to the extent that it implements the Exculpation Provision. *Id.* NHF appealed, unsuccessfully.[13]

After Judge Kenney's ruling, the Behrmanns, on October 19, 2012, filed in the California Litigation their First Amended Complaint (**JA 544**), naming 18 defendants in addition to the Debtor and the Houk Family. Although the Amended Complaint included numerous allegations detailing the NHF's and the Houk Family's sordid history—before, during, and after the bankruptcy—express language (the "Avoidance Language") was set forth in each cause of action against

---

[13] On April 3, 2013, the district court, per the Honorable Anthony J. Trenga, affirmed the bankruptcy court's Order refusing to reinstate the Release Provision. *NHF v. Behrmann*, 2013 U.S. Dist. LEXIS 49081 (E.D. Va. April 3, 2013). NHF appealed the rulings to this Court. The Court, on June 27, 2014, affirmed. *NHF v. Highbourne Foundation*, 2014 U.S. App. LEXIS 12144 (4th Cir. June 27, 2014). NHF petitioned for rehearing and rehearing *en banc*; its petition was denied on July 25, 2014. *NHF v. Highbourne Foundation*, 2014 U.S. App. LEXIS 14179 (4th Cir. July 25, 2014). NHF filed on today's date, October 23, 2014, a Petition for Certiorari to the U.S. Supreme Court.

NHF and/or the Houk Family specifying that the Behrmanns were not suing NHF

for pre-confirmation matters or the Houks for exculpated claims:

> The Behrmann Plaintiffs, in their individual capacities, are not bringing this claim against NHF for conduct that predates July 1, 2010 [the effective date of the Behrmanns' settlement agreement with NHF]. None of the Plaintiffs are bringing this claim against NHF or the Houk Defendants for the period of January 24, 2009 through October 16, 2009 (the reorganization period), until the bankruptcy court, this Court, or a competent Court of Appeals, authorizes such action, at which point, this claim shall be deemed pursued. Plaintiffs allege conduct occurring during this the reorganization period to preserve their due process rights to pursue this claim and as background evidence for the remainder of the claims.

(**JA 614-625 ¶¶ 186, 194, 202, 216, 223, 232, 239**).

The first notice NHF received of the California Litigation was when the

Behrmanns filed in the bankruptcy court on October 22, 2012 a motion for leave to

pursue exculpated claims against the Houk Family. (**JA 1315**). Following entry by

Judge Kenny of a stay pending appeal on October 25, 2012 (**JA 413**), the

Behrmanns abandoned all efforts to serve the Amended Complaint. *See* 1:13-cv-

1180, E.D. Va. Docket No. 9 p. 6 (E.D. Va. Oct. 18, 2013). (**JA 321 p. 4 ¶ 9**).

In the California Litigation, the Honorable Dolly M. Gee, on February 6,

2013, determined that the Behrmanns had standing to pursue their claims.[14] (**JA**

---

[14] The court concluded: "If . . . Plaintiffs were told they were giving money to create a charitable fund . . . and if, as alleged, that money was instead intended to line the pockets of several Defendants, then Plaintiffs have indeed alleged an injury to property. . . . With regard to standing, . . .Plaintiffs allege that the acts of wire and mail fraud *by the Houk Defendants* directly caused them to donate money that

-18-

**1396-1397**).  Judge Gee concluded, in addition, that certain actions committed by

NHF's counsel during the course of the bankruptcy case could qualify as predicate

acts for purposes of the Behrmanns' RICO claims.[15] (**JA 1398**).  Judge Gee stayed

the California Litigation pending the outcome of the appeals from bankruptcy court

orders. (**JA 1400; 12-cv-5636 DMG (CWx) (C.D. Cal.), Docket No. 116**).

### 7.     The Motion for Leave.

On April 9, 2013, the Behrmanns filed a "Renewed Motion for Leave to

Pursue Litigation Claims Against Members of the Houk Family for Claims Arising

During the Bankruptcy Exculpation Period" (**JA 814**) ("Motion for Leave"), to

which they attached a proposed Second Amended Complaint ("proposed SAC")

(**Dkt. 1180**).  The proposed SAC included detailed allegations of bankruptcy fraud,

specifically accusing the Houk Family of deceiving donors and the bankruptcy

court during the bankruptcy proceedings, *inter alia*, by filing false sworn financial

---

they would not have otherwise donated and that the other Defendants aided and
abetted the Houk Defendants in their misconduct. That is enough to confer
standing." (**JA 1396-1397**; emphasis in original)).

[15] The court wrote:  "At the hearing Plaintiffs suggested that they would be able, on
amendment, to allege predicate acts under [RICO] for false statements to the
bankruptcy court, falsely accepting money from a debtor with intent to defeat the
bankruptcy, or fraudulently transferring money in the midst of a bankruptcy
proceeding. . . . [T]hese allegations could constitute predicate acts under section
1962. . . . *Unlike the general allegation that the bankruptcy is a sham as a whole,
these allegations do not appear to have been adjudicated by the bankruptcy court*."
(**JA 1398**; emphasis added).

statements with the bankruptcy court that grossly understated, and in many cases, concealed the true amount of assets being held or controlled by NHF. (***See, e.g.,*** **Dkt. 1180 at ¶¶ 206-63**).

In an Order entered June 21, 2013 (**JA 1297**), the bankruptcy court denied the Behrmanns' Motion for Leave, after finding that they were unable to establish the *prima facie* case required to obtain leave to sue the Houk Family for matters relating to the administration of the Debtor's estate. Specifically, the court found that the bankruptcy fraud allegations in the proposed SAC were barred by the doctrine of *res judicata* because they amounted to a renewed attack on the good faith of the Plan, a claim, the court ruled, that the Behrmanns had already fully litigated and lost. (**JA 1303**). The court also found that the allegations in the proposed SAC were frivolous because the Behrmanns could not plausibly allege any injury arising out of the Houk Family's conduct during the bankruptcy proceedings since they had withdrawn their claim in the bankruptcy after settling with NHF. (**JA 1305**).

The Behrmanns, on June 28, 2013, filed a notice of appeal to the district court. (**JA 1349**).

**8.**    **The Contempt Proceedings.**  On November 15, 2013, NHF filed a motion in the Bankruptcy Court seeking to have the Appellants held in contempt for initiating the California Litigation against the Debtor and the Houk Family. (**JA**

**421**).  After a hearing, Judge Kenny, on June 20, 2013, issued the Contempt Order awarding $278,098.53 in fees and costs to the Debtor. *In re NHF*, 2013 Bankr. LEXIS 2516 (June 21, 2013) (**JA 1308**). Judge Kenney concluded that the Appellants' contempt consisted of (1) including pre-confirmation claims against NHF in the original Complaint in the California Litigation, in violation of the Plan, the Confirmation Order, and 11 U.S.C. § 1141(d)(1) (**JA 1332-1334**); (2) including in the First Amended Complaint claims against the Houk Family that the court deemed Exculpated Claims, in violation of the Plan and the Confirmation Order (**JA 1329-1331**); and (3) including pre-confirmation claims against NHF in the First Amended Complaint, in violation of the Plan, the Confirmation Order, and 11 U.S.C. § 1141(d)(1) (**JA 1334-1339**).

Judge Kenney also imposed a daily fine to coerce the Appellants to dismiss with prejudice in the California Litigation all claims against NHF, along with the Exculpated Claims against the Houk Family.[16] (**JA 1345 ¶ 3(a), (b)**).  The California district court, on September 20, 2013, entered an Order granting the Appellants' motion requesting dismissal of the offending claims with prejudice,

---

[16] Judge Kenney instructed that if the Appellants failed to comply with his Order by a date certain, the Court would impose a total fine of $1,000.00 per day, $500.00 per day as to the claims against NHF, and $500.00 per day as to the Exculpated Claims against the Houk Family. (***Id.***).  On April 1, 2014, Judge Kenney entered the Per Diem Order (**Dkt. 1302**), imposing a fine of $18,000.00. (***Id.* pp. 6-7**).  Unless an order is granting staying that appeal pending the outcome of this one, that Order will be the subject of a separate appeal to this Court.

with the proviso that "if the bankruptcy court's order that Plaintiffs dismiss NHF and the exculpated claims against the Houk Defendants is reversed, Plaintiffs are entitled to reinstate their claims against NHF and the exculpated claims against the Houk Defendants." CV 12-5636 DMG (CWx), Docket No. 116.

On July 3, 2013, the Appellants filed timely Notices of Appeal as to the Contempt Order. (**JA 1353, 1357, 1360**).   They deposited with the Bankruptcy Court Clerk $300,000.00 as a supersedeas bond, thereby staying collections efforts on the $278,098.53 portion of the Contempt Order, while they pursue their appeal.

### 9.    <u>District Court Affirmance.</u>

On May 5, 2014, the district court, per The Honorable Leonie M. Brinkema, affirmed the bankruptcy court's rulings on the Motion for Leave and the Contempt Order in a single opinion issued.  *Behrmann v. NHF (In re NHF)*, 510 B.R. 526 (E.D. Va. 2014) (**JA 1487**).  The Appellants, on June 3, 2014 and June 10, 2014, filed timely Notices of Appeal (**JA 1551, 1555, 1559**).

### <u>SUMMARY OF ARGUMENT</u>

The bankruptcy court committed legal error in denying the Motion for Leave.  The confirmation order, as modified by Judge Mitchell, provided that a lawsuit could be filed against the Houk Family for their misconduct during the bankruptcy case as long as the plaintiff first obtained approval of the bankruptcy court to file the action.  The courts below erred in ruling that the confirmation

-22-

order, which specifically contemplating the filing of an action against the Houk Family for exculpated claims, precluded the bankruptcy court from authorizing the Behrmanns to prosecute those claims.

In any event, *res judicata* principles do not apply under these circumstances. In construing whether a Chapter 11 plan of reorganization plan has been proposed in good faith for purposes of Section 1129(a)(3) of the Bankruptcy Code, the bankruptcy court's undertaking is to determine whether the plan is viable to maintain the debtor as a going concern and to maximize the property available to pay creditors. The court's finding of good faith for purposes of plan confirmation was not tantamount to a ruling that the Behrmanns were not harmed by the Houk Family's unlawful conduct during the bankruptcy.

Finally, the Behrmanns' claims for the Houk Family's misconduct during the bankruptcy case are well-founded in law, and the courts below erred in holding otherwise.

The lower courts also erred in ruling that NHF met its burden of establishing that the Appellants were in contempt. First, the filing of the original complaint caused NHF no harm, a necessary element of a claim for civil contempt. Because the original Complaint in the California Litigation was superseded by the Amended Complaint before NHF had any knowledge of the lawsuit, NHF could not have been harmed by the filing of the original Complaint.

-23-

Second, the numerous *allegations* of pre-confirmation conduct by NHF and the Houk Family in the Amended Complaint are not equivalent to *claims for monetary relief.* The confirmation plan's Injunction and Section 1141 of the Bankruptcy Code were not violated by mere allegations of pre-petition conduct. The courts below failed to construe inferences and ambiguities in favor of the Appellants, as they were required to do in the context of a civil contempt motion.

## ARGUMENT

## I.    THE BANKRUPTCY COURT ERRED IN DENYING THE MOTION FOR LEAVE.

As discussed below, the bankruptcy court erred in denying the Appellants' Motion for Leave.

### A. Standard of Review.

When this Court considers an appeal from a district court acting as a bankruptcy appellate court, it generally reviews *de novo* the legal conclusions of both the district court and the bankruptcy court, and reviews for clear error the factual findings of the bankruptcy court. *Guttman v. Constr. Program Group (In re Railworks Corp.)*, 760 F.3d 398 (4th Cir. 2014). The district court, treating members of the Houk Family as trustees for purposes of the Motion to Leave, described the applicable standard of review as to the Motion for Leave as follows:

> The abuse of discretion standard applies to [review of] a
> bankruptcy court's decision to deny a motion for leave to sue a trustee;
> . . . however, "such permission ordinarily should be granted unless it

-24-

is clear that the claim is without foundation.'"

*In re NHF, supra*, 510 B.R. at 537 (quoting *McDaniel v. Blust*, 668 F.3d 153, 157 n.1 (4th Cir. 2012).

"The preclusive effect of a judgment issued by a federal court is a legal question governed by federal common law and subject to de novo review." *United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 737 F.3d 908, 912 (4th Cir. 2013). Further, the lower court necessarily abuses its discretion when it commits an error of law or clearly errs in making a finding of fact. *Glynne v. Wilmed Healthcare*, 699 F.3d 380, 383 (4th Cir. 2012); *Am. Bankers Ins. Group v. Long*, 453 F.3d 623, 629 (4th Cir. 2006).

## B. The Bankruptcy Court Erred in Concluding that *Res Judicata* Precludes Appellants from Prosecuting Exculpated Claims.

The elements of res judicata are: (a) a final judgment on the merits in an earlier suit; (b) an identity of the causes of action; and (c) an identity of the parties or those in privity in the two suits. *United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 737 F.3d 908, 912 (4th Cir. 2013). Judge Kenney, in denying the motion for leave, reasoned that in confirming the Plan,

> Judge Mitchell found that the confirmed Plan was filed in good faith and not for any improper purpose, after a contested, evidentiary confirmation hearing in which the Behrmanns and their counsel participated and during which they had every opportunity to present any evidence of bad faith. The Behrmanns appealed and the Fourth Circuit affirmed. The issues are the same. The Exculpated claims are barred by res judicata.

-25-

(**JA 1303-1304**).  The court erred.

It must initially be emphasized that the confirmation order specifically contemplated the possibility that the Houk Family would be sued for claims within the Exculpation Provision.  As previously noted, Judge Mitchell's confirmation order modified the Plan to include a clause that a creditor could prosecute an exculpated claim "if such person obtains the prior approval of the Bankruptcy Court to bring such a claim." (**JA 163 § 7.21**).  This modification, the court ordered, was "incorporated into [the plan] and constitute[s] a part thereof." (**JA 151**).  An argument that *an Order that specifically contemplates that future actions could be prosecuted against the Houk Family* for their conduct during the bankruptcy now operates to preclude such an action is fallacious indeed. *Accord United States ex rel. Radcliffe v. Purdue Pharma L.P.*, 737 F.3d 908, 914 (4th Cir. 2013) ("Our [prior] decision . . . enforcing the Release did not (and could not) broaden the scope of the Release. Accordingly, because the Release does not bar non-signatories from proceeding against Purdue, the judgment enforcing the Release cannot bar such claims"); *Spicer v. Laguna Madre Oil & Gas II, L.L.C. (In re Tex. Wyo. Drilling, Inc.)*, 647 F.3d 547, 553 (5th Cir. 2011) ("The confirmation order specifically left open the opportunity for TWD to bring the claims in a second action, and the claims should not be precluded. Because the confirmation order preserved the Avoidance Actions, they are not barred by res judicata").

Hence even if *res judicata* did apply here—and it does not, as discussed below—application of the doctrine would, if anything, confirm that the Behrmanns should have the opportunity to litigate the exculpated claims.

In any event, *res judicata* has no application here. In confirming the Plan, as modified, the bankruptcy court found, *inter alia*, that NHF established the requirement set forth in Section 1129(a)(3) of the Bankruptcy Code that "[t]he plan has been proposed in good faith and not by any means forbidden by law." "Good faith" is not defined in the context of § 1129(a)(3), but in construing the term the courts have focused on whether the plan is appropriate in resuscitating a financially troubled company under the circumstances, rather than on the conduct of the bankruptcy debtor during the bankruptcy. Courts agree that the good faith requirement of § 1129(a)(3) is satisfied if there is "a reasonable likelihood that the plan will achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *McCormick v. Banc One Leasing Corp. (In re McCormick)*, 49 F.3d 1524, 1526 (11th Cir. 1995); *see also In re Am. Capital Equip., LLC*, 688 F.3d 145, 156 (3d Cir. 2012) ("In analyzing whether a plan has been proposed in good faith under § 1129(a)(3), the important point of inquiry is the plan itself and whether such a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code. . . . Specifically, under Chapter 11, the two recognized policies, or objectives, are preserving going concerns and maximizing

-27-

property available to satisfy creditors'" (citations, quotations omitted)). (*See* **Dkt. 666 pp. 32-33**).

The bankruptcy court's determination that NHF's plan of reorganization—which paid all unsecured "creditors" all or almost all of their claims—achieved the Chapter 11 policies of preserving NHF as a going concern and maximizing property available to those "creditors," is a far cry from a ruling that the Appellants were not harmed by the Houk Family's misconduct during the bankruptcy. Indeed, Appellants allege that during NHF's bankruptcy case, and without notice to Appellants, the Houk Family wrongfully collaborated to embezzle monies that Appellants had contributed to their Foundation. The differing set of operative facts, and differing collection of claims, do not satisfy the "identity of causes of action" requirement of *res judicata. Radcliffe*, *supra*.

### C. The Behrmanns' Bankruptcy-Related Claims Against the Houk Family are Well-Founded.

Judge Kenney also concluded that the Appellants' claims against the Houk Family for misconduct during the bankruptcy were "without foundation" for purposes of *McDaniel v. Blust*, *supra*, as follows:

> The Court finds that the proposed Second Amended Complaint fails to allege any proximate cause between any actions taken by the Defendants in connection with the NHF bankruptcy case and the losses claimed. It is just frivolous for the Behrmanns to say that they were somehow defrauded in connection with the bankruptcy case. They filed a claim; they objected to the Plan; they appealed; they lost on the good faith issue, but won on the Release provisions; and

-28-

ultimately, they withdrew their claim after entering into a Settlement Agreement with the Debtor.

(**JA 1305**).  Judge Brinkema, in reviewing the bankruptcy court's decision, recognized that some authority supported the Appellants' bankruptcy-related claims, but nevertheless affirmed because "[n]one of these cases is from this circuit, and none involve DAFs, which afford a unique tax advantage[17] by providing donors with a dollar-for-dollar deduction." (**JA 1513**).

The courts below erred.  For example, under the law of Georgia,[18] the State of NHF's incorporation, when NHF and the Houk Family liquidated the foundations' accounts and/or when they decided to use the donors' funds for their own benefit rather than for the charitable purposes intended by the donors, they assumed trustee duties with respect to the donated funds:

> If a gift is made for a specific purpose which is either expressed or is secretly understood and the purpose is illegal or from some other cause fails or cannot be accomplished, the donee shall hold the object of the gift as trustee for the donor or his next of kin.

---

[17] The tax advantages relating to donor advised funds should have no bearing on the analysis.  Presumably if a donor receives a recovery from the Houk Family and opts not to invest it in another tax-exempt organization, the recovery would be taxed as income.

[18] NHF contended below that because NHF is a Georgia corporation, Georgia law governs non-bankruptcy law issues relating to the Plan. (**Dkt. 666 p. 41**). *Accord Cuthill v. Greenmark, LLC (In re World Vision Entm't, Inc.)*, 275 B.R. 641, 661-662 (Bankr. M.D. Fla. 2002).

Ga. Code Ann. § 44-5-87.  Virginia law is consistent.[19]  The bankruptcy

misconduct alleged by the Behrmanns in the California Litigation is manifestly

inconsistent with a trustee's duties.

It is worth repeating, moreover, that Judge Gee in the California Litigation

concluded that the Behrmanns' claims against NHF's attorneys for their

misconduct during the bankruptcy case sufficiently alleged RICO predicate acts.

(**JA 1398**).  It is safe to assume that similar claims of bankruptcy fraud against the

Houk Family members themselves would pass muster there.  This Court,

accordingly, should reverse.

## II.    THE BANKRUPTCY COURT ERRED IN CONCLUDING APPELLANTS ACTED IN CONTEMPT OF THE CONFIRMATION ORDER AND THAT NHF HAD BEEN HARMED AS A RESULT.

The lower courts erred in determining that NHF met its burden of

establishing contempt, as shown below.

### A. <u>Standard of Review.</u>

_____

[19] *See, e.g., Hanshaw v. Day*, 202 Va. 818, 824, 120 S.E.2d 460, 464 (1961) ("The corporation was organized for charitable or benevolent or literary purposes. Contributions made to it and the assets realized therefrom were dedicated to those purposes and stamped with a public interest by the charter, the laws of this State, sound reason and public policy. The members acquired no property rights in, nor were they equitably entitled to such assets, either during the lifetime of the corporation or upon dissolution. To hold otherwise would convert the public nature and purpose of the corporation into a vehicle for the personal pecuniary gain of the members"); *Commonwealth ex rel. Terry v. Virginia Telemarketing, Inc..*, 15 Va. Cir. 489, 501 1989 Va. Cir. LEXIS 58 (May 9, 1989) (now-repealed statute imposing duty on corporation to hold gift for uses prescribed by donor "can be likened to [a] constructive trust").

In reviewing a civil contempt order, appellate court "review[s] the ultimate decision as to whether the contempt was proper for abuse of discretion, the underlying legal questions *de novo*." *U.S. v. Lavabit, LLC (In re Under Seal)*, 749 F.3d 276, 285 (4th Cir. 2014). This Court stands on the same footing as the bankruptcy court in construing the complaints in the California Litigation and the Confirmation Order—each written documents—and review of whether the complaints violated the Confirmation Order is a question of law subject to *de novo* review. *See*, *e.g.*, *Asia Pac. Indus. Corp. v. Rainforest Cafe, Inc.*, 380 F.3d 383, 385 (8th Cir. 2004).

In recognition of "the contempt power's virility and damage potential," even upon review of findings for an abuse of discretion, the appellate court should "proceed more searchingly" when it confronts a finding of contempt than when it consider a decision exonerating a putative contemnor. *Accusoft Corp. v. Palo*, 237 F.3d 31, 46 (1st Cir. 2001) (citations, quotations omitted). Any ambiguities in the order said to be violated must be construed in the light most favorable to Appellants. *E.g.*, *In re GMC*, 61 F.3d 256, 258 (4th Cir. 1995); *Cook Group, Inc. v. Wilson*, 1999 U.S. App. LEXIS 27340 at *6 (4th Cir. Sept. 14, 2009), *cert. denied*, 529 U.S. 1082 (2000); *United States v. Local 1804-1, Int'l Longshoremen's Ass'n*, 44 F.3d 1091, 1096 (2d Cir. 1995) ("In a civil contempt proceeding, . . . a contempt holding will fall unless the order violated by the contemnor is 'clear and

-31-

unambiguous,' the proof of non-compliance is 'clear and convincing,' and the

contemnor was not reasonably diligent in attempting to comply" (citation

omitted)).

B. **NHF Was Not Harmed By the Filing of the Original Complaint.**

This Court has instructed that a party seeking to establish civil contempt:

> must show each of the following elements by clear and convincing evidence: (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) …that the decree was in the movant's "favor"; (3) …that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive) of such violations; and (4) …that [the] movant suffered harm as a result.

*JTH Tax, Inc. v. H&R Block E. Tax Servs.*, 359 F.3d 699, 705 (4th Cir. 2004).

NHF has not shown and cannot show, and the bankruptcy court did not find,[20] that

it was damaged by the filing of the original Complaint in the California Litigation.

It is undisputed that Appellants took no action to serve the Complaint on

NHF or anyone else before filing their Amended Complaint, and that NHF did not

know of the California Litigation until after the Amended Complaint had been

filed.  An amended pleading "supersedes the original and renders it of no legal

effect." *Young v. City of Mt. Ranier*, 238 F.3d 567, 572 (4th Cir. 2001).

---

[20] The Contempt Order contains a discussion of the "Harm to the Debtor." (**JA 1339**).  This alleged harm was all incurred after the filing of the Amended Complaint. (*Id.*).

Accordingly, no harm resulted to NHF[21] from the filing of the original complaint,
and that pleading cannot serve as the basis for a contempt finding.  Contrary to the
lower courts' rulings, in the context of civil contempt, harm to NHF may not be
presumed by the Appellants' conduct. *Accord In re Johnson*, 362 B.R. 730, 740-41
(Bankr. N.D. W. Va. 2007) ("[A] sanction of civil contempt is not punitive; it is
remedial in nature"; "the Debtor never knew that Telecheck had violated the
automatic stay; consequently, …she never suffered any compensable injury…
Therefore, the court will deny the Debtor any recovery on her claim against
Telecheck for its violation of the automatic stay" (citing *Hass v. Duncan*, 2005
U.S. Dist. LEXIS 13400 at 10–12 (E.D.Va. July 6, 2005)).  NHF was unaware of
the filing of the first Complaint and suffered no harm.  Consequently civil
contempt cannot lie against the Appellants for filing the original Complaint.

### C.  __The Amended Complaint Cannot Serve as a Basis for Contempt.__

---

[21] Judge Brinkema, in affirming the Contempt Order, wrote that Appellants'
conduct "harmed the integrity of the bankruptcy court and judicial proceedings."
(**JA 1532**).  A finding of civil contempt, however, requires proof that "*the movant
suffered harm.*" *JTH Tax*, *supra* (emphasis added).  *See also In re GMC*, 61 F.3d
256, 258-259 (4th Cir. 1995) ("Generally, a compensatory sanction may not exceed
the actual loss to the complainant caused by the actions of respondent, lest the
contempt fine become punitive in nature, which is not appropriate in a civil
contempt proceeding" (citation, quotation omitted)).  In any event, Judge Kenney
made no finding of harm to the integrity of the bankruptcy court, and certainly
made no attempt to quantify such alleged harm.  The district court, on appeal, was
not in a position to make new findings.

In ruling that Appellants were in contempt of the confirmation order and 11 U.S.C. § 1141, the bankruptcy court refused to give effect to the Avoidance Language of the Amended Complaint. In its Findings of Fact, the court wrote:

> 27.    Despite the [Avoidance Language], the Amended Complaint is replete with *allegations* that pre-date . . . the Confirmation Order of October 16, 2009. . . .

> 28.    The Court finds that the Amended Complaint is an attempt to collect on a pre-petition and pre-confirmation debt against the Debtor. . . .

> * * *

> 30.    The only allegations of post-confirmation conduct in the Amended Complaint are contained in paragraphs 9 . . ., 156 . . .,157 . . ., and 158. . . .

> 31.    Similarly, despite the [Avoidance Language], the Amended Complaint is replete with *allegations* of misconduct and breaches of duty during the Reorganization Period . . ., *allegations* that are barred under the Exculpation provision of the Plan.

(**JA 1316-1318**) (emphasis added). In its Conclusions of Law, the court acknowledged that the Appellants were trying to "draft around" the Exculpation Provision in the Amended Complaint, but concluded, "At the end of the day, some things cannot be drafted around. The Exculpation provision of the confirmed Plan is one of them." (**JA 1331**).

The bankruptcy court erred. It is true that the Amended Complaint included numerous *allegations* of pre-confirmation misconduct by NHF and the Houk Family. Those allegations were made (1) to support the Behrmanns' pre-confirmation claims against certain non-debtor defendants who are not within the

-34-

scope of the Exculpation Provision[22]; and (2) to provide factual background for the Behrmanns' post-petition claims against NHF and the Houk Family.[23]  However, neither the discharge set forth in the confirmation order nor § 1141 preclude a plaintiff from making allegations in pleadings relating to pre-confirmation conduct. Rather, the plaintiff is barred from making *claims for monetary relief* relating to such conduct. *See, e.g.*, *Kaiser Aluminum Corp. v. Moss Landing Commer. Park, LLC*, 2010 U.S. App. LEXIS 13941 at *8 (3rd Cir. July 8, 2010) ("The key here is whether the asserted claim is a 'right to payment.' If so, it is a 'claim' under the Bankruptcy Code and is barred by the Plan injunction; if not, it is not a 'claim' and is not so barred").  The courts below erroneously read into the Amended

---

[22] These 18 other defendants were not debtors, were not subject to the bankruptcy court's orders, and thus, the Behrmanns' claims against them were not tolled. *See e.g. Grimmett v. Brown*, 75 F.3d 506, 516 (9th Cir. 1996) ("[T]he bankruptcy proceeding did not toll [plaintiff's] RICO claim against third party defendants who engaged in bankruptcy fraud").  Accordingly, the Behrmanns had no choice but to pursue and plead these claims with specificity, or risk losing the claims in their entirety forever. Fed. R. Civ. P. 9; *Field v. GMAC LLC*, 660 F. Supp. 2d 679, 686 (E.D. Va. 2008), *aff'd*, 328 F. App'x 873 (4th Cir. 2009) ("Where RICO claims are based on predicate acts of fraud, the heightened pleading standard set forth in Rule 9(b) of the Federal Rule of Civil Procedure applies"); *Thomas v. Ross & Hardies*, 9 F. Supp. 2d 547, 554 (D. Md. 1998) (failure to sufficiently plead participation in the enterprise resulted in dismissal of plaintiffs' RICO claim).

[23] *See Holcombe v. US Airways, Inc.*, 210 U.S. App. LEXIS 4729 (4th Cir. Mar. 5, 2010) ("[A]ny claims arising from . . . acts and omissions occurring after the Confirmation Date have not been discharged; any such claim remains open for full adjudication on remand").

Complaint "claims" that were not stated on the face of that pleading and, indeed, specifically renounced.[24]

The Behrmanns' post-petition claims against NHF and the Houk Family in the California Litigation may or may not have merit. That is not the issue, however. *See Paul v. Iglehart (In re Paul)*, 534 F.3d 1303, 1307-08 (10th Cir. 2008) ("As a general matter, it is both inappropriate and unnecessary for a bankruptcy court to oversee the conduct of litigation in other courts"). Because the Amended Complaint's Avoidance Language disclaims a right to payment for pre-confirmation misconduct, it did not violate the confirmation plan or § 1141.

The bankruptcy court, in addressing the contempt motion, should have construed inferences and ambiguities in favor of the Appellants, not against them. *In re GMC*, *supra* ; *United States v. Local 1804-1, Int'l Longshoremen's Ass'n*, *supra*. First, the court should have given effect to, and construed broadly in

---

[24] See *Beasley v. FV-I, Inc.*, 2013 U.S. Dist. LEXIS 39640 at *17 (E.D. Va. Mar. 21, 2013) ("Court will not attempt to read into the Complaint factual information or argument regarding breach of contract that simply does not exist in the Complaint"); See also *Davis v. Villers*, 5:12CV48, 2012 WL 7017863 (N.D.W. Va. Oct. 9, 2012) report and recommendation adopted, 5:12CV48, 2013 WL 459747 (N.D.W. Va. Feb. 7, 2013) ("the Court will not read into a complaint what is not there.."); *Cooper v. Smithfield Packing Inc.*, 2011 WL 3207912 (E.D.N.C. July 27, 2011) ("[T]he Court cannot act as plaintiff's counsel and read claims into the complaint that are not otherwise presented.") While these decisions largely deal with whether a plaintiff has stated sufficient facts to survive a motion to dismiss, it follows that a bankruptcy court in judging contempt should not be permitted to read beyond a plain disclaimer indicating that certain claims are not being pursued to find otherwise.

Appellants' favor, the Avoidance Language. Moreover, given the Behrmanns' allegation (**JA 525-526 ¶ 58**) and their counsel's testimony (**JA 894**) that the assignors did not receive notice of the bankruptcy or, *a fortiori*, the confirmation hearing, the court should not have ascribed the Behrmanns' knowledge of the bankruptcy and confirmation hearing to the assignors' claims.[25] More fundamentally, given NHF's successful effort to deprive the donors of the status of "creditors" in its bankruptcy—meaning that for purposes of the confirmation order the donors were deemed to have no "claim" against NHF—it was at least ambiguous as to whether the donors' claims were discharged in the bankruptcy at all.[26]

It is, therefore, straightforward that the lower courts erred in their determinations that the Appellants' filing of the Amended Complaint justified a civil contempt award.

---

[25] *See Reliable Elec. Co. v. Olson Const. Co.,* 726 F.2d 620, 623 (10th Cir. 1984) ("[T]he discharge of a claim without reasonable notice of the confirmation hearing is violative of the fifth amendment to the United States Constitution"); *In re Boyajian*, 564 F.3d 1088, 1092-93 (9th Cir. 2009) (recognizing "perversity of permitting dishonest debtors to receive a discharge through the fortuity that their creditor chose to assign the debt").

[26] Under Section 1141(d)(1)(A), the confirmation of a Chapter 11 plan "discharges the debtor from any *debt* that arose before the date of such confirmation." (Emphasis added).

-37-

D.   **The Bankruptcy Court Lacked Jurisdiction to Enter a Contempt Order That Was in the Nature of Criminal Contempt.**
     (*Appellants Schendzielos and Schendzielos & Associates, LLC*)

NHF did not respond to Appellant Schendzielos' contention that the charges against the Attorney appellants were in the nature of criminal contempt, and thus it was error to fail to afford them the full array of due process rights.  It is clear from the record that the court's belated *sua sponte* accusation and subsequent sanctions were in the nature of criminal contempt infecting the entire decision making process with unfounded equitable overreaching.

On December 4, 2012, the bankruptcy court acknowledged after 3 and 1/2 hours and 134 pages of testimony that there was no proper service on the Attorney Appellants' clients.  It is unclear from the record as to whether that service was ever completed.  The bankruptcy court in making its threshold determination whether or not to issue an order to show cause against Attorney Appellants apparently relied upon significant evidence that was not properly before the court. Further, the Attorney Appellants were not informed of the type of contempt charges and the exposure to the contempt liability equal to the clients — the Behrmanns — and the potential irreparable harm to their client relationships and to their careers until the subsequent show cause order issued.  On December 20, 2012, the Court issued the invidious Show Cause Order.  (JA 799)

-38-

On a number of occasions, the court accused one of the attorneys for the Behrmanns of breaking a "promise" or representation to the court. Much of the testimony taken and arguments made at the December hearing concerned a statement by a Behrmann attorney that the Behrmanns had no intention to file a lawsuit prior to the bankruptcy court's order (then pending) after remand.

Grilling an attorney in open court about matters important to his client and subjecting others who were not present to contempt accusations is a fragile foundation for sanctions of the magnitude entered in this case. In the more than six months after this Court vacated the confirmation judgment order, the legal status of the cases changed and the Behrmanns and their attorneys took action in large part consistent with a previous order of Judge Mitchell (Judge Kenney's predecessor on the case).

The United States Supreme Court has repeatedly cautioned that a contempt proceeding is fertile grounds for abuse by the courts. *Bloom v. State of Ill*., 391 U.S. 194, 204, 88 S. Ct. 1477, 1483, 20 L. Ed. 2d 522 (1968) ("The courts also proved sensitive to the potential for abuse which resides in the … power to punish contempt."); *Int'l Union, United Mine Workers of Am. v. Bagwell,* 512 U.S. 821, 831-32, 114 S. Ct. 2552, 2559, 129 L. Ed. 2d 642 (1994) ("the contempt power also uniquely is "liable to abuse"). Unlike most areas of law, where a legislature defines both the punishable conduct and the penalty to be imposed, contempt

proceedings leave the offended judge solely responsible for identifying,

prosecuting, adjudicating, and sanctioning the contumacious conduct. Contempt,

particularly when charged against attorneys acting on behalf of clients, often

strikes at the most vulnerable and human qualities of a judge's temperament.

Contempt is a weighty penalty, should not be casually imposed and should be

carefully reviewed. See *In re Williams*, 191 B.R. 497, 1996 Bankr. LEXIS 90,

Bankr. L. Rep. (CCH) P76, 930, 28 Bankr. Ct. Dec. 616; *Cook Group, Inc. v.*

*Wilson* (*In re Wilson*), 1999 U.S. App. LEXIS 27340, *6 (4th Cir. Sept. 14, 1999).

     The nature of a contempt citation is derived from the totality of the

circumstances and is not dependent on how the lower court characterizes it. See *In*

*re Chandler*, 906 F.2d 248, 249 (6th Cir. 1990) (citing *In re Jaques*, 761 F.2d 302,

305 (6th Cir. 1985)).  A contempt sanction is civil if it either coerces one into

compliance with a court order or compensates for the loss sustained. *Int'l Union,*

*United Mine Workers of Am. v. Bagwell*, 512 U.S. 821, 829, 114 S. Ct. 2552, 2558,

129 L. Ed. 2d 642 (1994).

     A contempt sanction is criminal if "it is imposed retrospectively for a

'completed act of disobedience' . . .." *Id*. at 828 (quoting *Gompers v. Bucks Stove*

*& Range Co*., 221 U.S. 418, 443, 31 S. Ct. 492, 498, 55 L. Ed. 797 (1911)). The

purpose of a criminal contempt sanction is to vindicate the authority of the

court. *Gompers*, 221 U.S. at 443; *TWM Mfg. Co., Inc. v. Dura Corp*., 722 F.2d

1261, 1270 n.8 (6th Cir. 1983).  Here, clearly the bankruptcy court acted *retrospectively* with regard to the Attorney Appellants as if they had completed an act of disobedience in defiance of the authority or dignity of the court.

## CONCLUSION

For all of the reasons stated, the Order denying the Motion for Leave and the Contempt Order must be reversed or, alternatively, vacated for further proceedings in the courts below.

## REQUEST FOR ARGUMENT

Appellants hereby request oral argument pursuant to Local Rule 34(a).   In light of the complexities of the claims at issue, the voluminous record, and the convoluted procedural history of this matter, Appellants believe that oral argument is appropriate and would aid the Court.

Respectfully submitted, this the 23rd day of October, 2014.

/s/ **John F. Bloss**
John F. Bloss
Higgins Benjamin PLLC
101 West Friendly Ave., Suite 500
Greensboro, NC 27401
jbloss@greensborolaw.com
Admitted *Pro Hac Vice*

/s/ **Jonathan D. Miller**
Jonathan D. Miller
Nye, Peabody, Stirling, Hale & Miller LLP
33 West Mission Street, Suite 201
Santa Barbara, CA 93101
jonathan@nps-law.com
Admitted *Pro Hac Vice*

/s/ **Daniel J. Schendzielos**
Daniel J. Schendzielos
Schendzielos & Associates LLC
8547 East Arapahoe Road, Suite J-534
Greenwood Village, CO 80112
denverdaniel@gmail.com
Admitted Pro Hac Vice

# <u>CERTIFICATE OF COMPLIANCE</u>

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 28.1(e)(2) or 32(a)(7)(B) because:

[ X ] this brief contains 10,659 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

[     ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

[ X ] this brief has been prepared in a proportionally spaced typeface using [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

[     ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].


Dated: October 23, 2014                      /s/ **John F. Bloss**
                                             *Counsel for Appellants*
                                               *J. Behrmann and N. Behrmann*

                                             /s/ **Daniel J. Schendzielos**
                                             *Counsel for Appellants*
                                               *D. Schendzielos and*
                                               *Schendzielos & Associates, LLC*

                                             /s/ **Jonathan D. Miller**
                                             *Counsel for Appellants*
                                               *J. Miller and Nye, Peabody,*
                                               *Stirling, Hale & Miller*

-43-

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on this 23rd day of October, 2014, I caused this Brief of Appellant and Joint Appendix to be filed electronically with the Clerk of the Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

David B. Goroff
FOLEY &LARDNER
321 North Clark Street, Suite 2800
Chicago, Illinois 60654
(312) 832-5160

Erika L. Morabito
FOLEY &LARDNER, LLP
300 K Street, N.W., Suite 600
Washington, D.C. 20007
(202) 295-4791

*Counsel for Debtor – Appellee*

I further certify that I will cause the required paper copies of the Brief of Appellant and Joint Appendix to be hand filed with the Clerk of the Court on the 24th day of October, 2014.

**/s/ John F. Bloss**
*Counsel for Appellants*
*J. Behrmann and N. Behrmann*

-44-